# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 29, 2003 Session

## STATE OF TENNESSEE v. GARY S. JOHNSON

### Direct Appeal from the Criminal Court for Claiborne County
### No. 11579    O. Duane Slone, Judge

### No. E2002-01246-CCA-R3-PC
### September 3, 2003

The Defendant, Gary S. Johnson, pled guilty to vehicular homicide, a Class B felony, on August 6, 1996. The trial judge originally sentenced him to twelve years of house arrest and community corrections. The State appealed, and this Court vacated the sentence because the Defendant was not eligible for community corrections. Upon re-sentencing the Defendant was ordered to serve ten years of incarceration. The Defendant did not immediately appeal, but filed a timely Motion for a Modification and/or Reduction of Sentence. Prior to the trial court ruling on the motion, the Defendant filed a Petition for Post Conviction Relief based on ineffective assistance of counsel. The trial court denied both the Defendant's motion and the Petition for Post Conviction Relief on June 12, 2002. The sole issue for appeal is whether the trial court erred in denying the Defendant's Petition for Post Conviction Relief. Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Edward C. Miller, Dandridge, Tennessee (on appeal); and S. Joanne Ellis, Newport, Tennessee (at post-conviction hearing), for the appellant, Gary S. Johnson.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; William Paul Phillips, District Attorney General; Jared Effler and Michael O. Ripley, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
## I. Factual Background

The Defendant pled guilty to vehicular homicide on August 6, 1996, indicating that he "did unlawfully, feloniously, and recklessly kill Amy Tripp by the operation of an automobile, the killing of Amy Tripp being the proximate result of said [Defendant's] intoxication as the operator of his vehicle." See Tenn. Code Ann. § 39-13-213. At the time he entered his plea, the Defendant

indicated that he was of sound mind and that no one had made any promises to him regarding his sentence. At his initial sentencing hearing, Maxwell Huff, counsel for the Defendant, argued that the Defendant should serve eight years of community corrections. Ultimately, the trial court gave the Defendant the choice of ten years in prison, with the possibility of parole in three years, or twelve years of house arrest and community corrections. The Defendant chose the latter.

The State appealed, and this Court remanded the case for re-sentencing, finding that the Defendant was ineligible for the community corrections program and that, therefore, his sentence of twelve years in the community corrections program was invalid. State v. Johnson, No. 03C01-9709-CR-00399, 1998 WL 915905, at *2-*3 (Tenn. Crim. App. Nov. 12, 1998) (perm. app. denied May 10,1999). The Defendant was re-sentenced on October 6, 1999, to ten years of incarceration, with the possibility of parole in three years. The Defendant did not appeal this sentence and did not file a waiver of appeal pursuant to Rule 37 of the Tennessee Rules of Appellate Procedure.

On February 3, 2000,[1] the Defendant filed a Motion for Reduction and/or Modification of his sentence. Prior to the trial court ruling on that motion, the Defendant filed an "Amended Petition for Post-Conviction Relief" on June 28, 2001, in which he claimed that he received ineffective assistance of counsel. The Defendant asserted that Attorney Huff was deficient both in advising him to plead guilty and in failing to perfect an appeal after the Defendant was sentenced by the trial court.

On May 9, 2002, the trial court held a hearing on both the post-conviction petition and the Defendant's motion for a modification and/or a reduction of his sentence. At the hearing, Attorney Huff testified that he had spoken personally with the Defendant "numerous times" over "several years" regarding this case and the Defendant's guilty plea. He stated that the Defendant pled guilty to vehicular homicide because the Defendant chose to on his own accord, after Attorney Huff advised him that the trial judge "looked more favorable" on people who accepted responsibility for their behavior. He admitted that he told the Defendant his strategy was to argue for eight years of community corrections, but explained that the Defendant could serve time in prison. Attorney Huff testified that he explained to the Defendant that he would probably make parole after thirty percent of his sentence had been served, but could be subject to as many as eight to twelve years of incarceration as a result of his plea. Further, Attorney Huff testified that he explained to the Defendant that it was ultimately up to the parole board whether or not the Defendant would be released early.

Attorney Huff also testified that he adequately investigated a claim by the Defendant that there may have been a third car involved in the accident. He testified that he personally interviewed the investigating officer and two people who were at the bar with the Defendant the night of his

---

[1]The Motion was actually filed on June 30, 2000, which would make it untimely. However, the motion states that the Defendant gave it to prison officials on February 3, 2000, for filing. The trial court found that the motion was timely, and the State has not appealed that finding. Therefore, for purposes of this opinion, we assume that the motion was timely filed.

accident, and also reviewed numerous photos of the Defendant's vehicle and the scene of the accident. The Defendant suggested that Lewis Overton, one of the bar patrons on the night of the accident, may have been involved in the accident. Attorney Huff interviewed Overton, who told Attorney Huff that he was not involved in the accident. The investigating officer also stated that Overton was not involve and was not a witness. Furthermore, Attorney Huff also testified that after examining photos of the Defendant's car, he came to the conclusion that "there was nothing plausible" about the theory that a third car was involved in the accident, and did not attempt to locate Overton's car. Specifically, Attorney Huff pointed to the fact that there were no paint marks or pieces of a third vehicle on the Defendant's truck, and also that there was not enough damage to the Defendant's truck to suggest it was struck by a third vehicle. He stated that "all the evidence basically implicated [the Defendant] in that case."

Attorney Huff testified that the general consensus between him and the Defendant was that the Defendant had fallen asleep at the wheel and that this was the cause of him striking the victim's car. Attorney Huff testified that the Defendant had no memory of any third vehicle being involved and agreed to plead guilty because he did not want expose the victim's family to a trial.

Regarding his failure to appeal the case, Attorney Huff explained that he did not appeal because the Defendant instructed him not to. He stated that after the second sentencing hearing, he advised the Defendant two or three times of his right to appeal, and the Defendant told him that he did not want to appeal and "wanted to put it behind him." Attorney Huff also testified that he knew the Defendant was well aware of his right to appeal because he had already been through an appeal after his first sentencing hearing. Attorney Huff admitted to failing to file a waiver of appeal pursuant to Rule 37, and stated he did not do so because he had not done this in other cases and had never seen it done before.

The State also presented as evidence a Christmas card written by the Defendant to Attorney Huff in 1999. In it, the Defendant made no reference to any appeal and wrote that he hoped that Amy Tripp's family would not appear at his upcoming parole hearing because "if they do, I've had it." The State contended that this letter shows that the Defendant both understood the possibility that he may not be released on parole and that he did not wish to appeal because he was looking forward to his parole hearing.

The Defendant testified at the hearing on his post-conviction petition and admitted that his attorney did say that he could receive an eight to twelve-year sentence, but also stated that Attorney Huff advised him that he would only have to serve thirty percent of that sentence. He also testified that his attorney did not tell him that his parole could be denied. He stated that Attorney Huff failed to fully investigate the fact that four people told the Defendant that Overton had disappeared and gotten rid of his car soon after the day of the accident. He also testified that he told his counsel that Overton had come to his house crying and said he was sorry that the Defendant had been involved in the accident. He stated that Attorney Huff failed to investigate this statement and the fact that Overton allegedly had a habit of following the vehicle in front of him too closely. The Defendant also stated that he pled guilty because Attorney Huff told him to, and because Attorney Huff told him

not to subject the victim's family to a long trial. He stated that he would not have pleaded if he knew he would have to serve ten years day-for-day in prison.

The Defendant also testified that he felt that at the time of his guilty plea he was not competent to stand trial and that he was on prescription medication at the time. He stated that Attorney Huff failed to raise issues of his competency to the trial judge. The Defendant admitted that he remembered signing a statement that indicated that he was not suffering from any condition or under the influence of any substance which prevented his understanding of his plea. He admitted that this statement is inconsistent with his assertion of incompetency. He also admitted that he was angry with Attorney Huff because he was denied parole at his first parole hearing. Finally, the Defendant testified that he did sign a statement indicating he was not made any promises regarding his case and at the time he wrote the Christmas card to Attorney Huff he recognized there was a possibility that he might not make parole.

At the close of the post-conviction relief hearing, the trial court found that the Defendant was competent at the time his plea was taken. It also found that the Defendant's trial counsel properly and vigorously investigated matters "including, but not limited to, the issue of whether Mr. Overton was the causal factor" of the accident. The trial judge also found that Attorney Huff did not make any promises to the Defendant with regard to his release eligibility date and did not fail to advise the Defendant that his release was within the discretion of the parole board. Furthermore, the trial court found that the Defendant was aware that he could appeal, and that the Defendant affirmatively waived his right to appeal through no fault of his attorney. Overall, the trial court held that Attorney Huff was "diligent and extremely competent in his efforts" to provide the Defendant with effective assistance of counsel at both sentencing hearings. Thereafter, the trial court denied the Defendant's Petition for Post-Conviction Relief and Motion for a Modification and/or Reduction of Sentence. The Defendant filed a notice of appeal to this Court.[2]

## II. Analysis

The Defendant contends that he received ineffective assistance of counsel both with regard to (a) the Defendant's trial counsel advising him to plead guilty in the hopes of receiving a community corrections sentence and (b) the Defendant's trial counsel failing to perfect an appeal in this case. We conclude that the trial court did not err in finding that the Defendant received effective assistance of counsel.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-

---

[2]While the Defendant's notice of appeal states that he appeals the "court's order dismissing his petition for post conviction relief and his Rule 35 motion," the Defendant did not brief or present facts articulating an appeal of the Rule 35 motion. Therefore, he has waived an appeal of the Rule 35 motion and any merits of such an appeal are not addressed herein.

conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). A post-conviction court's factual findings are subject to a <u>de novo</u> review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. <u>Fields v. State</u>, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely <u>de novo</u> review by this Court, with no presumption of correctness. <u>Id.</u> at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to <u>de novo</u> review. <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn.1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. <u>Id.</u>; <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. <u>Burns</u>, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. <u>Baxter</u>, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. <u>Id.</u> at 687; <u>Cooper v. State</u>, 849 S.W.2d 744, 747 (Tenn.1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. <u>Strickland</u>, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also</u> <u>Harris v. State</u>, 875 S.W.2d 662, 665 (Tenn. 1994).

This standard also applies to claims arising out of the plea process. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). To satisfy the requirement of prejudice in a case involving a guilty plea, the petitioner must demonstrate a reasonable probability that, but for counsel's errors, he or she "would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59.

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. <u>Strickland</u>, 466 U.S. at 690; <u>State v. Mitchell</u>, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. <u>Strickland</u>, 466 U.S. at 690; <u>Cooper</u>, 849 S.W.2d at 746; <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Burns</u>, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. <u>Williams v. State</u>, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

Although the State concedes that trial counsel was deficient in his representation that a sentence of community corrections was available to the Defendant, the Defendant fails to present clear and convincing evidence that his attorney's performance at the two sentencing hearings resulted in the requisite prejudice required to prevail on a claim of ineffective assistance of counsel. See Strickland, 466 U.S. at 688; see also Cooper, 849 S.W.2d at 747. Despite erroneously arguing for a sentence of community corrections at the initial sentencing hearing, Attorney Huff was able to secure for the Defendant a sentence of ten years of incarceration, with the possibility of parole in three years, a sentence with which the Defendant was apparently satisfied when he stated that he did not wish to appeal the sentence.

Furthermore, the Defendant has failed to show by a reasonable probability that but for trial counsel's erroneous representation that the Defendant was eligible for community corrections, the Defendant would have insisted on going to trial. See Hill, 472 U.S. at 59. The trial court found that the Defendant was competent at the time he indicated at his plea hearing that he was satisfied with his open plea and that he was made no promises regarding his sentence or his eligibility for early release. This finding is entitled to a presumption of correctness, see Fields, 40 S.W.3d at 456, and we see no reason to overturn this finding on appeal. As the Defendant offered no evidence that a different strategy by Attorney Huff would have resulted in a more beneficial outcome, the claim that an error by trial counsel "had some conceivable effect on the outcome of the proceeding" is insufficient to prevail on this issue. Strickland, 466 U.S. at 693.

Finally, we see no reason to overturn the finding by the trial court that the Defendant's failure to appeal his sentence was due to his own affirmative waiver of the right to appeal, and not due to any fault of his trial counsel. The Defendant refers to Michael S. Hurt v. State, No. 01C01-9207-CC-00213, 1993 WL 39751 Tenn. Crim. App. (Tenn. Crim. App. Feb. 18, 1993), as a factually similar case that indicates that the Defendant's constitutional rights were violated when his trial counsel failed to file a written waiver of appeal. However, as the State points out, Hurt can be distinguished because the defendant in that case indicated a desire to appeal should his incarceration time exceed ten years, and his attorney failed to file a waiver of appeal or further discuss an appeal with his client when it was clear that a consecutive sentence had given him an effective sentence of more than ten years. Id. at *2. In the case at bar, there was no such question regarding the Defendant's desire not to appeal his sentence. Hence, the trial court did not err when it found that the Defendant received effective assistance of counsel with regard to his failure to perfect an appeal.

### III. Conclusion

We hold that the trial court did not err in finding that the Defendant received effective assistance of counsel at his sentencing hearings.

Accordingly, the judgment of the trial court is AFFIRMED.

_____

ROBERT W. WEDEMEYER, JUDGE